IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MAHESH PATEL and MITTAL PATEL                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 1:23-CV-100-SA-DAS

JAY MATAJI, INC., ATUL PATEL,
AMIT PATEL, and MITESH PATEL                                      DEFENDANTS

ORDER AND MEMORANDUM OPINION

On August 2, 2023, Mahesh Patel and Mittal Patel initiated this litigation when they filed their Complaint [1] against Jay Mataji, Inc., Atul Patel, Amit Patel, and Mitesh Patel.[1] The Plaintiffs filed an Amended Complaint [40], which is now the operative complaint, on May 1, 2024. The Plaintiffs, who were previously employed by the Defendants, assert Fair Labor Standards Act ("FLSA") claims, in addition to state law claims, against the Defendants. The Defendants have asserted a counterclaim for civil conversion.

Now before the Court is the Plaintiffs' Motion to Dismiss Counterclaim and Motion for Partial Summary Judgment [80], as well as the Defendants' Motion for Partial Summary Judgment [85]. The Court, having reviewed the filings and the applicable authorities, is prepared to rule.

*Relevant Background*

This lawsuit stems from an employment relationship between the parties that went south.

From February 28, 2022 through May 2023, the Plaintiffs managed a convenience store in Starkville, Mississippi. Jay Mataji, Inc. is the listed owner of the convenience store. Jay Mataji, Inc. is co-owned and co-managed by Mitesh Patel, Amit Patel, and Atul Patel.

---

[1] Plaintiffs Mahesh and Mittal Patel are married. Although they have the same last name as the Defendants, they are not related to the Defendants.

During the relevant time period, the store was open seven days a week. On Monday through Saturday, the store hours were 7:00 AM through 10:00 PM. On Sunday, the store was open from 8:00 AM through 8:00 PM. According to the Plaintiffs, they worked virtually every shift from February 2022 through May 2023 with Mitesh covering only a few shifts on an as-needed basis. There were no other employees who worked at the store during this time period. Throughout their tenure, the Plaintiffs never clocked in to work, and there was no other timekeeping method utilized at the store.

During their employment, the Plaintiffs were living in a home that they rented from Mitesh. They paid Mitesh rent of $950.00 per month.

The Plaintiffs' compensation is the main point of contention in this lawsuit. The Plaintiffs contend that prior to the commencement of their employment, Mahesh met with Atul about the job. According to the Plaintiffs, during that meeting, Mahesh and Atul entered into a partnership agreement pursuant to which the Plaintiffs would run the store for some period of time without being paid in exchange for a partnership interest in the company. This agreement was never reduced to writing.

From February 2022 through May 2023, the Defendants allege that the Plaintiffs received checks for payroll. For instance, they allege that in 2022, Mittal received nine monthly payments totaling $25,500. For 2023, they contend that Mittal received four payments totaling $8,800 and Mahesh received three payments totaling $6,300. The Plaintiffs allege that "the company did not pay Mahesh or Mittal any payroll checks" and that the payroll records upon which the Defendants rely are fraudulent. [40] at p. 5. The Plaintiffs also contend that from February 2022 through May 2023 Mahesh would occasionally raise the issue of partnership to the three co-owners but his requests were simply brushed aside and never acted upon. In May 2023, Mahesh allegedly

2

expressed to the three co-owners his dissatisfaction with the way that he and his wife had been treated. The Plaintiffs contend that the Defendants responded by terminating their employment and kicking them out of the home they were renting from Mitesh.

This lawsuit followed. In their Amended Complaint [40], the Plaintiffs allege FLSA violations, in addition to multiple state law causes of action. The Defendants have asserted a counterclaim for civil conversion, contending that the Plaintiffs stole money from them during the employment relationship.

As noted previously, the Plaintiffs have moved the dismiss the counterclaim. They also seek partial summary judgment in their favor on their FLSA minimum wage and overtime claims. In their Motion [85], the Defendants seek summary judgment on the Plaintiffs' breach of contract claims.

*Analysis and Discussion*

The Court will begin with the Plaintiffs' Motion [80], which is two-fold. First, they seek dismissal of the Defendants' civil conversion counterclaim for lack of jurisdiction. Then, they seek judgment in their favor as to liability on their FLSA minimum wage and overtime claims.

The Court first looks to the counterclaim. In their Counter Complaint [12], the Defendants allege that, through a review of the store's sales and deposit records, they "discovered substantial accounting discrepancies which resulted in far less money being deposited into the business account of [Jay Mataji, Inc.] than should have occurred." [12] at p. 11. They contend that the Plaintiffs "converted substantial sums of money of their employer to their personal use without permission and authorization." *Id*.

"Generally speaking, courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's

tortious conduct allegedly caused." *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010) (citing *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)). This is because "[a]s a general rule, 'set-offs against back pay awards deprive the employee of the "cash in hand" contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions.'" *Jackson v. Hardrock Landscapes, LLC*, 2023 WL 2672402, at *4 (W.D. Tex. Mar. 28, 2023) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 828 n. 9 (5th Cir. 2003); *Brennan*, 491 F.2d at 4).

The District Court for the Western District of Texas considered a similar issue in *Jackson*, 2023 WL 2672402. There, the plaintiffs (Frank Jackson and Albert Cantu) alleged that their employer (Hardrock) failed to pay them overtime wages as required by the FLSA. *Id*. at *1. The defendants asserted a counterclaim for conversion, asserting that Jackson wrongfully exercised control over a company truck and other work-related property and failed to promptly return it after his employment was terminated. *Id*. The defendants also asserted a breach of contract counterclaim on the basis that the failure to promptly return the property was a violation of the terms of employment that were provided to Jackson on the day he began working for the company. *Id*.

The district court granted the plaintiffs' request to dismiss the counterclaims for lack of jurisdiction. *Id*. at *5. In doing so, the court noted that "[t]he Fifth Circuit and other courts have identified compelling reasons for district courts to decline to exercise supplemental jurisdiction over employers' proposed permissive counterclaims against FLSA plaintiffs." *Id*. (citing *Martin*, 628 F.3d at 740; *Brennan*, 491 F.2d at 4; *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010)).

Here, the Defendants recognize the general hesitancy against exercising jurisdiction over counterclaims of this nature but attempt to draw a distinction. They argue that "in cases cited by

4

Plaintiffs in support of the lack of jurisdiction argument, plaintiffs sought relief only under the FLSA. Here, Plaintiff brings multiple state law claims. If the court, in its discretion, decides to hear issues and evidence related to multiple state law claims of Plaintiffs against Defendants, there is no legal basis for denying Defendant Jay Mataji the opportunity to seek relief from those claims by way of a conversion claim." [88] at p. 3.

Despite arguing that the Court should take this distinction into account, the Defendants cite no authority to support their position. In other words, they cite no case where a court has exercised jurisdiction over a counterclaim of this nature simply because a plaintiff has asserted other claims along with the FLSA claims.

Considering the Fifth Circuit's clear directive that courts be hesitant as to the exercise of jurisdiction over counterclaims in this context, this Court declines to exercise jurisdiction over the Defendants' counterclaim. *See*, *e.g.*, *Cordero v. Voltaire LLC*, 2013 WL 6415667 at *5 (W.D. Tex. Dec. 6, 2013) (report and recommendation) ("Voltaire's counterclaims do not share common facts with the FLSA claims and a different body of evidence will be required to prove those claims. The only nexus between the FLSA claims and Voltaire's counterclaims is the employment relationship between the parties. . . [N]umerous courts have found that there was no supplemental jurisdiction over unrelated counterclaims in FLSA actions.") (multiple citations omitted).

However, the Court does agree with the Defendants to some extent, as it recognizes a perceived inequity in declining to exercise jurisdiction over a state law counterclaim yet permitting the Plaintiffs to proceed on their own supplemental state law claims. Although the Court could draw a distinction between the Plaintiffs' other claims, many of which do relate to the employment arrangement and compensation contemplated by the parties, and the Defendants' civil conversion counterclaim, which does not, it need not do so. This is because in their Reply [94], the Plaintiffs

5

"agree that, if the Court finds there is no supplemental jurisdiction over Defendants' counterclaims—as it must—the Court can also decline jurisdiction over Plaintiffs' state law counts and dismiss all the state-law claims without prejudice." [94] at p. 2.

The Court will do just that and will instead consider only the Plaintiffs' FLSA claims. The Plaintiffs' other claims and the Defendants' counterclaim will be dismissed *without prejudice*.

To the extent the Plaintiffs' Motion [80] seeks dismissal of the Defendants' counterclaim, it is GRANTED. Conversely, the Defendants' Motion for Partial Summary Judgment [85] which seeks dismissal of the Plaintiffs' supplemental breach of contract claims is DENIED AS MOOT.

Having resolved that issue, the Court turns to the second aspect of the Plaintiffs' Motion [80], which concerns their FLSA minimum wage and overtime claims. In their filing, the Plaintiffs contend that "summary judgment for the Plaintiffs is appropriate on five points[.]" [81] at p. 8. The five points on which they seek summary judgment are:

(1) Plaintiffs are non-exempt, covered employees of all the Defendants.

(2) Defendants violated regulations requiring them to correctly track the hours worked and pay received by Plaintiffs, and therefore Defendants bear the burden of contesting and proving the hours worked and pay received.

(3) Defendants did not pay Plaintiffs any wages.

(4) Plaintiffs worked more than 40 hours in at least some weeks, and Defendants violated the FLSA by failing to pay overtime.

(5) Defendants cannot establish, as an affirmative defense to liquidated damages, that they meet the "substantial burden" of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.

*Id*. at p. 8-9.

The Defendants do not dispute the first point, as they admit that the Plaintiffs were non-exempt, covered employees under the FLSA. They also apparently concede a portion of the fourth point—that is, that the Plaintiffs worked more than 40 hours in at least some weeks.

The Defendants contest the other points. In particular, they emphasize that they have produced W-2s indicating that payroll payments were made in 2022 and 2023. The Defendants recognize that the Plaintiffs contend the Defendants falsified documents pertaining to payroll but assert that those issues are fact questions that must be resolved by a jury. The Defendants also emphasize the testimony of Atul Patel as the Rule 30(b)(6) deponent for Jay Mataji, Inc., wherein Atul agreed with the proposition that "Mahesh would get authorization from the accountant to write himself a check for his pay[.]" [80], Ex. 2 at p. 4. The Defendants contend that this too creates a question of fact as to the payments that the Plaintiffs received. In addition, Mahesh testified that at one point during the employment relationship he received a $10,000 check from the Defendants. He contends that this check was for his living expenses—not wages—yet he later testified that a portion of it was to be deducted from his paycheck.

Ultimately, the Court agrees with the Defendants, as questions of fact concerning compensation abound. Although there may be a liability finding at trial, the evidence presented does not warrant judgment as a matter of law. And while the Plaintiffs contend that the facts supporting their claims are undisputed, the reality is that many of the facts are indeed in dispute between the parties. The Court finds it appropriate for the jury—not this Court at the summary judgment stage—to resolve these questions. *See*, *e.g.*, *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) ("It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations."). Summary judgment in the Plaintiffs' favor is not proper on the facts presented.

To the extent the Plaintiffs' Motion [80] seeks judgment in its favor as to liability, it is DENIED.

*Conclusion*

For the reasons set forth above, the Plaintiffs' Motion [80] is GRANTED IN PART AND DENIED IN PART. The Defendants' Motion [85] is DENIED AS MOOT. The Defendants' counterclaim and the Plaintiffs' non-FLSA claims are DISMISSED *without prejudice*.

SO ORDERED, this the 23rd day of April, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE